No. 13.—Henry Hodges, plaintiff in error, *vs.* The State, defendant in error.

[1.] Against a prosecution for stabbing, under the Act of 1847, the defendant must show that he did the act in self-defence.

[2.] To make the plea of self-defence available to an indictment for stabbing, the Jury should not be restricted to the facts and circumstances which existed at the exact point of time when the injury was inflicted.

[3.] If the proof show that the rencontre between the parties was a running fight, the prosecutor retreating only until he could get into a situation to renew the combat to advantage, then the defendant may be justified in wounding his adversary, at any time during the engagement, provided the deadliness of the attack, and the physical superiority of his foe, make it necessary for his safety.

[4.] The fact that a defendant, in a criminal cause, may take up his case to the Supreme Court, and the State cannot, is no reason why he should not have meted out to him, by the Court and Jury, the full measure of his legal rights.

Indictment for stabbing, in Dooly Superior Court. Tried before Judge POWERS, October Term, 1853.

At the October Term, 1853, Henry Hodges was put upon his trial, on an indictment for stabbing one James Holt.

The defendant pleaded " not guilty".

On the trial, the State swore Sampson Cason, who testified, "that on the day of the difficulty, heard Hodges and Holt talking loud and angry—the d——d lie was exchanged—Holt struck Hodges; the latter drew his knife, when Holt gave back, drew his knife, and in the difficulty, both were cut—Holt giving Hodges the first wound". Counsel for defendant offered to prove by this witness, " that immediately after the stabbing, and while witness considered the fracas as not ended, Holt seized a gun, and swore he would kill Hodges; this was done twice, and he was prevented by the by-standers from so doing"; to which the Solicitor General objected. The Court sustained the objection, and counsel for defendant excepted.

Counsel for defendant offered to prove, by Whitehouse Cason, " that the defendant was a man of weak and infirm back, and unable to fight prosecutor"; which testimony was rejected by the Court, and counsel for defendant excepted.

The Jury found the defendant guilty; whereupon, his counsel moved the Court for a new trial, upon the following grounds:

Hodges *vs.* The State.

1st. Because the Court erred, in refusing to admit the evidence of Sampson Cason, as to Holt swearing that he would kill Hodges, &c.

2d. Because the Court erred, in repelling the evidence of Whitehouse Cason.

3d. Because the Court erred, in refusing to charge the Jury, as requested, "that if they believed from the evidence, Hodges, the defendant, was first struck by prosecutor, and then stabbed by prosecutor; and that he, Hodges, immediately thereafter, and before the voice of reason and humanity could be heard, pursued and cut prosecutor, they should find defendant not guilty".

4th. Because the Court erred in charging the Jury, that it was responsible for the Law; and if it committed error, that error, if against the prisoner, could be taken up and corrected —the State could not take up a case.

5th. Because the Jury found contrary to Law and evidence.

The Court overruled the motion for a new trial, and counsel for defendant excepted.

SCARBOROUGH, HALL & CAREY, for plaintiff.

Sol. Gen. DeGRAFFENREID, for defendant.

*By the Court.*—LUMPKIN, J., delivering the opinion.

[1.] The defendant relies upon the plea of self-defence, to protect him against this prosecution. And this alone, is admissible, under the Statute of 1847, against stabbing.

[2.] And taking the rulings of the Court, in the exclusion of the defendant's testimony, with his charge to the Jury, it is manifest, that in the opinion of the presiding Judge, the justification set up, to be available, must be restricted to the exact point of time during the progress of the affray, when Holt was cut by Hodges. We think that this view of the rights of the prisoner, is too restricted.

[3.] Is it true, as assumed, that Holt was retreating all the

time from Hodges? And that the latter took advantage of the accidental fall of his adversary, to inflict upon him the injury which he did? Let us advert, for a moment, to a portion of the testimony.

Thomas Ayers, who testified on the part of the State, says, that he saw the combatants retire to talk together; soon words grew loud between them; Holt slapped his hands together, and struck Hodges; Hodges then dropped his hand on his thigh and drew his knife; Holt broke and run, and Hodges after him; Holt got his knife out, and turned and cut Hodges, and then struck him with a piece of rail, and run again; Hodges pursued Holt, when Holt fell, and he cut him; Holt struck and cut Hodges, before Hodges cut; Hodges received a considerable cut on the arm, and had a bruise on his face, where Holt struck him. Sampson Cason was next examined, on the part of the State—Holt and Hodges retired to talk; they soon became loud and angry; heard Holt say, "Hodges that is an infernal lie"; Hodges retorted back the d——d lie; he saw him run backwards with his hat off, and a scratch on his face; he drew his knife and put at Holt; Holt drew his knife and wheeled about; witnesses's father said, "stop that boys"; Hodges desisted; Holt run 20 or 25 yards; got a rail off the fence, and returned upon Hodges; Hodges threatened to kill him, if he struck him with the rail; Holt aimed a blow with it, but missed Hodges, it being fended off by Hodges, or old Mr. Cason; the rail struck the ground and was pulled out of Holt's hand; he ran again four or five steps and fell, and Hodges cut him; witnesses's father requested Hodges to stop, which he did; Holt got up; run a few steps and picked up a limb, and coming back, said he could whip Hodges; Hodges refused to fight him a fair fight, confessing, as he did at the beginning of the quarrel, that he was unable to do so; but said, as they had commenced with knives, they must continue with them, or drop it altogether; it all occurred instantaneously. Counsel for defendant, offered to prove by this witness, that immediately after Holt arose, when he was cut, he seized a gun, and swore he would kill Hodges; and that this

was done twice; and that he was prevented by the by-standers from carrying his threat into execution.

I have only extracted a portion of the proof offered in support of the prosecution. But it is sufficient to show, that this was anything but a retreat on the part of Holt.

If so, why did he turn upon Hodges, after succeeding in getting out his knife, and wound him in the arm? Why, after he fled the second time, and Hodges discontinued the pursuit, by the request of old Mr. Cason, did he gather up a fence rail, and returning, aim a deadly blow at his foe? Does not the whole testimony establish that this was a running fight between the parties? And that whenever Holt got the advantage, he exhibited a perfect willingness to renew the rencontre? At any rate, should not the transaction have been left to the Jury, to be by them considered in this light? If such was its true character—and it seems to us that no one can, from the evidence in the record, doubt it—then, unquestionably, Hodges was not compelled to wait until Holt could re-assail him; but in the exercise of a wise precaution, he might anticipate the attack of Holt, by striking him at any time during the fight.

Hence, the propriety and importance of letting in the testimony, which was offered and rejected, as to the after conduct of Holt. His seizing the gun and threatening—I might be warranted in saying, attempting to take the life of Hodges, was a part of the *res gestæ;* and demonstrated the *quo animo* with which he kept up the engagement.

And hence, too, the propriety and importance of proving the physical inequality between the parties. Indeed, the justification of Hodges must depend, to some degree at least, upon his bodily infirmity, which forbade the possibility of his encountering Holt upon equal terms. We hold, consequently, that it was error in the Judge, to withhold this evidence from the Jury.

[4.] The Court charged the Jury, amongst other things, that if he committed error, it could be carried to the Su-

preme Court and corrected, if against the prisoner; but not so if against the State.

Again we must condemn, as we have had occasion to do heretofore, this remark. If defendants have the advantage, as intimated by the Court, it is one to which they are entitled under the law; and it does not relieve either the Court or the Jury from the obligation to mete out to them, not only the full measure of their legal rights, but in cases of doubt, to give to prisoners the benefit of these doubts. To administer justice in mercy, less than this cannot be done.

When we reflect that the prosecutor in this case, used the *first* opprobious language, struck the *first* blow—which, from its effects, must have been a pretty severe one, and that he was actually guilty of the *first stabbing*, it is scarcely reconcilable with our notions of equal justice, that he should escape punishment entirely, and that the defendant, who can hardly be considered as more guilty than himself, should be sentenced to fifteen months imprisonment in the penitentiary.

If the proof transmitted to this Court gives a true version of this transaction, it is neither more nor less than an aggravated *affray*, for which both of the parties deserve to be prosecuted and punished.

Judgment reversed.